# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DERRICK FORMAN | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | NO. 19-5300 |
| | : | |
| MONTGOMERY COUNTY | : | |
| CORRECTIONAL FACILITY, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                            **February 7, 2020**

Correctional officers ignoring a psychiatric care inmate's protests about being placed in a medical cell with a naked masturbating inmate with a history of assaulting cellmates and who then sexually assaults him may be liable to the protesting inmate for deliberative indifference or failure to protect. He may sue state actors with personal knowledge or who may be liable under a theory of supervised liability. After evaluating a counseled complaint by the assaulted inmate, we today grant the prison, its Warden, and correctional officer's Motion to partially dismiss claims against: the prison as it is not a "person" under the civil rights laws; the Warden for supervisory liability; the Warden and a correctional officer in their official capacity; and, claims for punitive damages. We grant the allegedly assaulted inmate leave to timely file an amended Complaint attempting to plead civil rights liability against the appropriate parties based on personal knowledge or supervisory liability.

## I. Alleged facts

The Commonwealth placed Derrick Forman in custody at the Montgomery County Correctional Facility.[1] It placed him under psychiatric care. It also decided to house him in a medical prison cell along with David Blum. Mr. Blum had a history of harassment and sexually

assaulting other inmates.² Before entering the cell, Mr. Forman witnessed Mr. Blum naked and masturbating in the cell's back corner.³

Correctional Officer Yocum still ordered Mr. Forman into Mr. Blum's cell.⁴ Mr. Forman told Officer Yocum and Corrections Officer Doe Mr. Blum's naked masturbating created the risk Mr. Forman could be sexually assaulted if left in the cell with Mr. Blum.⁵ Officer Yocum told him to "do as the romans [sic] do" and join Mr. Blum.⁶ Officer Yocum placed Mr. Forman in the cell with Mr. Blum despite this protest.⁷

Ten minutes later, while Mr. Forman yelled at Mr. Blum to stop while yelling for help from the officers, Officer Yocum returned to the cell and told Mr. Forman "the only way you're getting out of there is if you beat [Mr. Blum] to death."⁸ After some time passed, Mr. Forman asked an unnamed female employee to let him out of the cell because Mr. Blum would not stop masturbating.⁹ The female employee told Mr. Forman she understood his concerns and would return.¹⁰ Mr. Forman laid in bed before Mr. Blum sexually assaulted him again.¹¹ Mr. Forman "flipped out" and shook his cell.¹² While doing so, Mr. Blum defecated on the cell floor.¹³

The female officer then took Mr. Forman out of the cell.¹⁴ The doctor on site examined Mr. Forman and released him into general population without providing medical care or treatment.¹⁵ The Facility released Mr. Forman from its custody about three weeks later.¹⁶

## II. Analysis¹⁷

Mr. Forman alleges the officers took no action to prevent or stop Mr. Blum's sexual assault even though they observed him on regular patrols.¹⁸ Mr. Forman sued the Facility, Warden Algarin, Officer Yocum, Mr. Blum and John Doe officers. He argues the state actors did not properly investigate his concerns and the Facility refused to provide medical care.¹⁹ He claims

Eighth Amendment cruel and unusual punishment and deliberate indifference, Fourteenth Amendment civil rights violations, supervisory liability, and civil assault.[20]

The Facility, Officer Yocum, and Warden Algarin move to dismiss: (1) all claims against the Facility; (2) all claims against Warden Algarin; (3) all official capacity claims against Officer Yocum and Warden Algarin; and, (4) punitive damage claims against the Facility. Mr. Forman withdrew his claim for punitive damages from the Facility.[21] Mr. Forman's counsel has not served Mr. Blum as of yet.

### A. Mr. Forman may not proceed on his civil rights claim against the Facility.

Mr. Forman seeks to impose Section 1983 liability upon the Facility for violating his Eighth and/or Fourteenth Amendment rights.[22]

#### 1. The Facility is not a person under § 1983.

The Facility argues even if Mr. Forman stated a *Monell* supervisory liability claim against the Facility (and they do not concede this), it must be dismissed with prejudice because "[a]s a mere department, agency, or facility of county government, [Facility] is not a separate legal entity, and it is not subject to suit as a "person" under 42 U.S.C. § 1983."[23]

Rule 17(b) defines the capacity of a party to be sued is "determined by the law of the state in which the district court is held."[24] Counties (such as Montgomery County) have the legal capacity to be sued in Pennsylvania.[25] There is no Pennsylvania authority stating a facility, agency, or department of a county government can be sued as a separate legal entity for money damages under our civil rights laws.[26] A Section 1983 claim only applies to "persons."[27] "A county correctional facility is not a person amenable to suit" under Section 1983.[28]

In *Allen v. Montgomery Cty.*, Mr. Allen sued Montgomery County, the Facility, Montgomery Country Correctional Facility Prison Board of Inspectors, Warden Algarin, and

3

others under Section 1983 based on their failure to treat and diagnose his rectal cancer.[29] Judge Pratter dismissed the Facility finding it "is not a person under §1983 and for that reason cannot be liable to Mr. Allen for his injuries . . . [h]owever, Defendants cite no authority for the proposition that [Inspectors] cannot be sued under § 1983, nor has the Court found any support for this proposition."[30] Judge Pratter found "at least one § 1983 case tried in this District against both Montgomery Country and [Montgomery County Correctional Facility Prison Board of Inspectors]."[31]

As in *Allen*, Mr. Forman improperly named the Facility as a Defendant. The civil rights claim against the Facility must be dismissed with prejudice because it is not a "person" under § 1983.[32] We allow Mr. Forman leave to timely file an amended complaint, to name an appropriate municipal defendant for his Section 1983 claim if he can do so consistent with Fed. R. Civ. P 11.[33]

### B. Mr. Forman fails to plead a civil rights claim against Warden Algarin.

Mr. Forman alleges Warden Algarin has a duty to: ensure a safe and secure facility; properly treat inmates; protect him from the risk of sexual assault from Mr. Blum; and, intervene in the assault. He alleges Warden Algarin never properly investigated the incident and refused to provide him with medical care.[34]

Warden Algarin moves to dismiss all claims against him.[35] He argues liability as a supervisor cannot be based upon *respondeat superior* and Mr. Forman does not allege sufficient facts of personal involvement in the alleged constitutional violation.[36] We agree. Mr. Forman fails to plausibly plead a Section 1983 claim against Warden Algarin. We dismiss this claim without prejudice to allow Mr. Forman the opportunity to allege sufficient facts to state a claim should he be able to plead the Warden's personal involvement or supervisory liability under Fed. R. Civ. P. 11.

4

### 1. Mr. Forman does not plead Warden Algarin's personal involvement.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[37] To proceed with a supervisory liability claim, a plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations."[38]

Mr. Forman only mentions Warden Algarin by name in paragraph five of his complaint where he identifies him as a defendant and Warden of the Facility.[39] Warden Algarin is lumped into the category of "Defendants." Mr. Forman then alleges Defendants failed to protect him, never investigated the sexual assault, and refused to provide him with medical care.[40] Conclusory allegations are not enough.

Mr. Forman does not allege Warden Algarin directly supervised Officer Yocum or the other officers on the day of Mr. Forman's sexual assault or directed the officers to put Mr. Forman in Mr. Blum's cell. He also does not allege facts of Warden Algarin knowing of the risk of sexual assault by Mr. Blum from a history of earlier assaults, knew the sexual assault occurred, or knew Mr. Forman needed medical treatment as a result of the sexual assault. Absent allegations of personal direction or actual knowledge, Mr. Forman's claims must be based on a *respondeat superior* theory, which is prohibited under Section 1983.[41] He may also attempt to plead supervisory liability.

### 2. Mr. Forman fails to plead a claim for Warden Algarin's supervisory liability under *Monell*.

Mr. Forman also fails to plead Warden Algarin's supervisory liability under *Monell*. Warden Algarin argues Mr. Forman fails to plead supervisory liability claims against him. He failed to plead facts to demonstrate the plausibility a formal policy directly caused Mr. Forman to be sexually assaulted by Mr. Blum and paragraphs fifty-seven to sixty of the Complaint are conclusory allegations insufficient to "demonstrate a plausible claim that a [Facility] policy caused [Mr. Forman] to be sexually assaulted."[42] Warden Algarin also argues facts are not plead which "demonstrate the plausible existence of a [Facility] custom that was the moving cause of any constitutional violation."[43] He argues Mr. Forman does not plausibly demonstrate a sexual assault occurred "because of a wide spread custom or practice in place among staff at [the Facility] that was so permanent and well-settled as to virtually constitute law there."[44] Warden Algarin argues he cannot be the moving force behind an alleged violation of Mr. Forman's constitutional rights because Mr. Forman did not "set forth facts to plausibly demonstrate the Warden's personal involvement in and the causation of the constitutional violation alleged."[45] Mr. Forman only plead facts related to a "single alleged incident."[46] We agree.

### i. Mr. Forman does not allege a municipal policy, custom, or Warden Algarin is the moving force behind the alleged constitutional law violation.

The Supreme Court directs a municipality or policy maker can be liable under 42 U.S.C. § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" takes away an individual's constitutional rights.[47] To withstand a motion to dismiss, the plaintiff must have alleged "sufficient facts indicating a policy or custom of the [Municipality]."[48] "[V]ague assertions" of custom or policy are insufficient to properly find liability.[49] "Liability exists when

6

'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"[50] "[A] municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees."[51] "A municipality is not liable under [s]ection 1983 unless the policy or custom was the 'moving force' underlying the constitutional violation."[52] "It is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom."[53] A "'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' -- whether a natural one or a municipality – has exhibited deliberate indifference to the plight of the person deprived."[54]

### a. Mr. Forman does not allege facts of an established municipal policy being the moving force behind the alleged constitutional law violation.

In *Monell*, the Supreme Court held a plaintiff must plead the existence of "1) a policy or lack thereof; 2) a policy maker that effectuated said policy; and 3) a constitutional violation whose 'moving force' was the policy in question."[55] "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."[56] Our Court of Appeals held a single incident normally "does not suffice to establish either an official policy or custom."[57]

Mr. Forman alleges:

> 57. At all material times, Defendants instituted policies and procedures within the Montgomery County Correctional Facility, with indifference to the constitutional rights of inmates confined to that facility, including but not limited to Plaintiff.

> 58. The policies and procedures relate specifically to incarceration and housing of individuals suffering with mental illness and the mental illness screening procedures.

> 59. Those policies and procedures include the creation and promotion of an atmosphere where corrections officers ignore the reasonable complaints of inmates, including Plaintiff, as aforesaid.

7

> 60. As a proximate result of Defendants' policies and procedures, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity lost opportunity, as well as emotional distress, mental anguish, humiliation, pain and suffering and consequential damages. [58]

Taken together, Mr. Forman is trying to allege a municipal policy of ignoring reasonable complaints and indifference to the constitutional rights of inmates, specifically, the housing of inmates with mental illness. Mr. Forman's pleading is too vague to survive the motion to dismiss as he does not allege "sufficient facts indicating a policy." [59] His allegations are conclusory. He does not allege Warden Algarin is a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' [and] issue[d] an official proclamation, policy, or edict."[60] Mr. Forman alleges facts of a single incident, which our Court of Appeals holds "does not suffice to establish either an official policy or custom."[61] The alleged fact Mr. "Blum had a serious history of sexual assault and harassment of inmates" does not change the conclusion Mr. Forman only alleged facts of a single incident.[62] Mr. Blum is not a "'policy maker'" effectuating an official policy which is the "'moving force'" behind the alleged "constitutional violation" under *Monell*.[63] Mr. Blum is an individual whose actions are his own so those actions cannot be attributed to Warden Algarin on the basis of what has been plead so far. Mr. Forman does not allege Warden Algarin is a final policy maker at the Facility, has a history of putting other inmates in a cell with Mr. Blum in accordance with an official policy, allege facts indicating an official policy of ignoring reasonable complaints and indifference to the constitutional rights of inmates, or is the moving force behind the constitutional violation by "exhibiting deliberate indifference."[64]

8

> b. **Mr. Forman does not allege a municipal custom has been established, Warden Algarin has acquiesced to it, and it is the moving force behind the alleged constitutional law violation.**

Our Court of Appeals has found a municipal custom when there is a "course of conduct, although not specifically endorsed or authorized by law," which is "so well-settled and permanent as virtually to constitute law"[65] To establish *Monell* liability, the plaintiff must sufficiently allege the entity or official "has the power to make policy" or has acquiesced "to a well-settled custom."[66] We are persuaded by the distinct facts reviewed by Judge Pratter's analysis in *Wright*.[67] Mr. Wright alleged "no fewer than eight specific customs, practices, or policies maintained or indulged by the City at the time of his arrest and prosecution that led to his constitutional injury."[68] In contrast to *Wright*, our Court of Appeals found a single incident generally "does not suffice to establish either an official policy or custom."[69] The Supreme Court likewise struck a jury instruction which "allowed the jury to impose liability on a the basis of . . . a single incident."[70]

Mr. Forman's allegations are woefully short of *Wright's* eight distinct policies or customs motivating his constitutional injury. Mr. Forman does not allege facts indicating a practice becoming custom by being "so permanent and well settled as to virtually constitute law," which then became the moving force behind the violation of his constitutional rights.[71] Mr. Forman only alleges facts of one specific incident with Mr. Blum, which our Court of Appeals found to be insufficient to establish a custom.[72] He alleges, in a conclusory manner, Mr. Blum had a history of sexually assaulting and harassing inmates.[73] He does not allege facts of earlier incidents, a pattern of repeated incidents Warden Algarin knew of, and Warden Algarin knew the risk created by a pattern of incidents, and, notwithstanding said knowledge, continued to place inmates in Mr. Blum's cell to be sexually assaulted creating a custom so well-settled as to virtually constitute law.[74] Mr. Forman also does not allege Warden Algarin is the final policy maker at the Facility,

9

acquiesced to a well-settled custom, or exhibited deliberate indifference to Mr. Forman's substantial risk of injury.[75]

We dismiss Mr. Forman's *Monell* claims against Warden Algarin without prejudice. We grant leave to timely amend should Mr. Forman plausibly plead facts of Warden Algarin as a final policy maker at the Facility, has a history of putting other inmates in a cell with Mr. Blum in accordance with an official policy, there is an official policy of ignoring reasonable complaints and indifference to the constitutional rights of inmates, and Warden Algarin is the moving force behind the alleged constitutional law violation by exhibiting deliberate indifference to the plight of Mr. Forman. Or plausibly plead facts indicating a municipal custom had been established, Warden Algarin acquiesced to the custom, and Warden Algarin is the moving force behind the alleged constitutional law violation by exhibiting deliberate indifference to Mr. Forman's risk.

### C. We dismiss the claims against Warden Algarin and Officer Yocum in their official capacity.

Mr. Forman sued Warden Algarin and Officer Yocum in their individual and official capacities.[76] He also sued (improperly) their governmental employer.[77] If his claims are successful, the damages are paid from the employer-County and not the officer's personal assets.[78]

The state actors argue the official capacity claims against Officer Yocum and Warden Algarin are duplicative of Mr. Forman's § 1983 claim against the improperly named governmental employer, and must be dismissed with prejudice.[79]

Official capacity claims against governmental officials are duplicative of claims against the governmental entity.[80] Claims against employees in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent."[81] "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[82] When

10

seeking damages from someone in their personal capacity, those person's assets are at stake, but when suing someone in an official capacity, the government entity pays the damages with its assets.[83] Our Court of Appeals has held when a suit identifies an employee in their official capacity and the governmental entity who employs them as defendants, the former claim is duplicative of the later claim and should be dismissed.[84]

In *Johnson*, plaintiff sued Chester County Prison, Director Roberts, and multiple corrections officers in their official capacity under Section 1983.[85] Judge Smith dismissed the claims against Chester County Prison holding it was not a "person" for Section 1983 purposes.[86] He then noted the "official capacity claims against [the officers] are more properly brought against Chester County itself" because "[o]fficial capacity claims against corrections officials are indistinguishable from claims against the entities that employ them."[87] Judge Smith also noted "Johnson has failed to state a claim against Chester County because nothing in the complaint alleges that the purported violations of his constitutional rights stemmed from a municipal policy or custom. . . . Accordingly, to the extent [Mr.] Johnson's official capacity claims are construed as claims against Chester County, the court will dismiss those claims."[88]

Similar to Judge Smith's analysis in *Johnson*, Montgomery County employs Warden Algarin and Officer Yocum at the Facility. The Facility is not a proper defendant in requiring we dismiss it with prejudice. The official capacity claims against Warden Algarin and Officer Yocum are "more properly brought against [Montgomery] County itself" or the Montgomery County Prison Board of Inspectors.[89]

Although the claims are no longer duplicative, Mr. Forman insufficiently pleads a Section 1983 claim under *Monell* because he does not allege sufficient facts to indicate "the purported violations of his constitutional rights stemmed from a municipal policy or custom," as stated

11

above.⁹⁰ As in *Johnson,* "to the extent [Mr. Forman's] official capacity claims are construed against [Montgomery] County," we dismiss those claims without prejudice. ⁹¹

### III. Conclusion

We dismiss all civil rights claims against the Facility as it is not a proper defendant under Section 1983. We dismiss civil rights claims against Warden Algarin. Mr. Forman also fails to plausibly plead official capacity claims against Warden Algarin and Officer Yocum.

We grant Mr. Forman leave to timely file an amended complaint naming proper defendants for a Section 1983 claim including possibly identifying a municipal policy or custom as to an entity or policymaker. We dismiss the punitive damages claim with prejudice upon consent.

---

¹ ECF Doc. No. 1 at ¶ 13.

² *Id.* at ¶ 30.

³ *Id.* at ¶ 15.

⁴ *Id.* Mr. Forman does not plead the correctional officer's first name.

⁵ *Id.* at ¶ 16.

⁶ *Id.* at ¶ 17.

⁷ *Id.* at ¶ 18.

⁸ *Id.* at ¶¶ 19-20.

⁹ *Id.* at ¶ 21.

¹⁰ *Id.* at ¶ 22.

¹¹ *Id.* at ¶ 23.

¹² *Id.* at ¶ 24.

¹³ *Id.*

¹⁴ *Id.* at ¶ 25.

[15] *Id.* at ¶¶ 26, 31.

[16] *Id.* at ¶ 27. Mr. Forman does not plead why the Facility released him.

[17] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[18] ECF Doc. No. 1 at ¶¶ 41-42.

[19] *Id.* at ¶¶ 29, 29 [sic].

[20] *Id.* at ¶¶ 30 [sic], 31.

[21] ECF Doc. No. 9-3 at 13.

[22] Mr. Forman never plead whether he is a pre-trial detainee (claims governed by the Fourteenth Amendment) or a convicted prisoner (claims governed by the Eighth Amendment) at the time of the alleged conduct. Our Court of Appeals "has applied the same standard to a failure-to-protect claim under the Fourteenth Amendment as under the Eighth Amendment." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014).

[23] ECF Doc. No. 8 at 10; *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658 (1978).

[24] Fed. R. Civ. P. 17(b).

[25] 16 P.S. § 202(2).

[26] *See, e.g., Duffy v. County of Bucks*, 7 F. Supp. 2d 569, 579 (E.D. Pa. 1998) ("The Probation Dept. is not a proper defendant under § 1983 because it has no legal identity separate from Bucks County; it is not a 'person' under § 1983."); *Wiggins v. Montgomery County Correctional Facility*, No. 87-6992, 1987 WL 14721, at *1 (E.D. Pa. Nov. 16, 1987) ("[T]he Montgomery County Correctional Facility is *not* a person under § 1983. For this reason alone, the complaint must be dismissed." (emphasis in original)); *Duvall v. Borough of Oxford*, No. 90-629, WL 59163, at *2

(E.D. Pa. Mar 19, 1992) (dismissing a claim against the Chester County Prison because it has "no separate corporate existence from Chester County" so it is not a "person" subject to suit under § 1983).

[27] *Fraser v. Pa. State Sys. Of Higher Educ.*, No. 92-6210, 1994 WL 242527, at *5 (E.D. Pa. June 6, 1994), *aff'd*, 52 F.3d 314 (3d Cir. 1995).

[28] *Johnson v. Chester Cty. Prison*, No. 19-4960, 2020 WL 405605, at *4 (E.D. Pa. Jan. 24, 2020) (citing *Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (concluding the district court rightly dismissed claims against a county prison because even though "[a] local government agency may be a 'person' for purposes of § 1983 liability[, county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (per curiam) (concluding the district court properly determined the county prison is not a "person" under § 1983); *Reagan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at 4* (E.D. Pa. Mar. 11, 2009) (finding "a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws"), *aff'd*, 363 F. App'x 917 (3d Cir. 2010)) (internal citations omitted).

[29] *Allen v. Montgomery Cty.*, No. 09-1458, 2009 WL 4042761, at *1-2 (E.D. Pa. Nov. 19, 2009).

[30] *Id.* at *3 (citing *Adams v. Hunsberger*, 262 Fed. App'x 478, 481 (3d. Cir. 2008) ("The District Court properly concluded that [the plaintiff's] claims against the Pennsylvania Department of Corrections were barred, as it is not a 'person' within the meaning of 42 U.S.C. § 1983."); *Amaro v. Montgomery Cty.*, No. 06-3131, 2008 WL 4148610, at 4* (E.D. Pa. Sept. 8, 2008) (concluding specifically Montgomery County Correctional Facility is not a "person" under § 1983 ); *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976) (holding a prison is not a "person" able to be sued under federal civil rights law)) (internal quotations omitted).

[31] *Id.* at *3 (citing *Schwartz v. Cty. of Montgomery*, 843 F. Supp. 296, 299 n.1 (E.D. Pa. 1993) ("[T]he proper party defendant is the Montgomery County Prison Board of Inspectors and that it is this body which is primarily responsible for promulgating prison rules and regulations, making appointments and generally overseeing the operation of the prison.")).

[32] *Miller v. Curran-Fromhold Correctional Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell*, 426 F. Supp. at 274).

[33] *Spears v. Dauphin County Prison*, No. 09-1847, 2009 WL 3366568, at *1 (M.D. Pa. Oct 29, 2009) (allowing leave to file an amended complaint and name the proper party where plaintiff had claims against a prison dismissed because they are not a 'person' under § 1983).

[34] ECF Doc. No. 1 at ¶¶ 28, 29, 29 [sic], 44, 46.

[35] ECF Doc. No. 8 at 11.

[36] *Id.* at 11-12.

14

37 *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal citations omitted).

38 *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir.1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir.1995).

39 ECF Doc. No. 1 at ¶ 5.

40 *Id.* at ¶¶ 28, 29.

41 *Robinson*, 120 F.3d at 1293; *Baker*, 50 F.3d at 1190–91; *Rode*, 845 F.2d at 1207.

42 ECF Doc. No. 8 at 8.

43 *Id.* at 9.

44 *Id.*

45 *Id.* at 11-12.

46 *Id.* at 9.

47 *Salvato v. City of Philadelphia*, No. 19-2079, 2020 WL 247880, at *3 (E.D. Pa. Jan. 15, 2020) (citing *Monell*, 436 U.S. at 694).

48 *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 437 (E.D. Pa. 2015).

49 *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 822 (1985) (reasoning the policy plaintiff relies on cannot be "nebulous" or "removed from the constitutional violation").

50 *Salvato*, 2020 WL 247880, at *3 (citing *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001)).

51 *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).

52 *Stevens v. Borough*, No. 11-7216, 2013 WL 2292047, at *3 (E.D. Pa. May 23, 2013) (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010)).

53 *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990), *other grounds superseded in part by statute*, Civil Rights Act of 1991.

54 *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (citations omitted).

55 *Stevens*, 2013 WL 2292047, at *3 (quoting *Monell*, 436 U.S. at 690-91).

⁵⁶ *Andrews*, 895 F.2d at 1480 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072 (1991)).

⁵⁷ *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989); *see also Gwynn v. City of Philadelphia*, 866 F. Supp. 2d 473, 488 (E.D. Pa. 2012) *aff'd*, 719 F.3d 295 (3d Cir. 2013) ("It is well established that proof of a single instance of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.") (citations omitted).

⁵⁸ ECF Doc. No. 1 at ¶¶ 57-60.

⁵⁹ *Groman*, 47 F.3d at 637; *Buoniconti*, 148 F. Supp. 3d at 437.

⁶⁰ *Andrews*, 895 F.2d at 1480 (quoting *Pembaur*, 475 U.S. at 481).

⁶¹ *Fletcher*, 867 F.2d at 793; *see also Gwynn*, 866 F. Supp. 2d at 488.

⁶² ECF Doc. No. 1 at ¶ 30.

⁶³ *Stevens*, 2013 WL 2292047, at *3 (quoting *Monell*, 436 U.S. at 690–91).

⁶⁴ *Sample*, 885 F.2d at 1118.

⁶⁵ *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

⁶⁶ *Bielevicz*, 915 F.2d at 850 (citing *Andrews*, 895 F.2d at 1480).

⁶⁷ *Wright v. City of Philadelphia*, 229 F.Supp. 3d 322, 337 (E.D. Pa. 2017).

⁶⁸ *Id.* at 336-37.

⁶⁹ *Fletcher*, 867 F.2d at 793; *see also Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident — or even three incidents — do not suffice."); *Washington-Pope v. City of Philadelphia,* No. 12-4300, 2015 WL 7450522, at *11 (E.D. Pa. Nov. 24, 2015) ("There is no bright line rule which establishes how widespread a practice must be [to become a "custom"], but courts have held that a single instance is not enough.").

⁷⁰ *City of Oklahoma*, 471 U.S. at 821.

⁷¹ *Kelly*, 622 F.3d at 263.

⁷² *Fletcher*, 867 F.2d at 793.

⁷³ ECF Doc. No. 1 at ¶ 30.

⁷⁴ *Bielevicz*, 915 F.2d at 850; *Fletcher*, 867 F.2d at 793.

⁷⁵ *Andrews*, 895 F.2d at 1480; *Sample*, 885 F.2d at 1118.

⁷⁶ ECF Doc. No. 1 at ¶¶ 3, 5.

⁷⁷ *Id.* at ¶ 2.

⁷⁸ *Kentucky*, 473 U.S. at 166.

⁷⁹ ECF Doc. No. 8 at 9-10.

⁸⁰ *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

⁸¹ *Monell*, 436 U.S. at 690, n.55.

⁸² *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

⁸³ *Kentucky*, 473 U.S. at 166.

⁸⁴ *See, e.g., Baez v. Lancaster County*, 487 Fed. Appx. 30, 32 (3d Cir. 2012) (holding the official capacity claim against the Warden is duplicative of the lawsuit against the county); *Cuvo v. De Biasi*, 169 fed. App'x. 688, 693 (3d Cir. 2006) ("We will affirm the District Court's dismissal of the claims against the officers in their official capacities because a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them."); *see also Dawson v.* Harran, No. 08-7, 2008 WL 1959696, at *6 (E.D. Pa. May 5, 2008) (dismissing plaintiff's claims against official capacity defendants for being duplicative of claims against the township); *Burton v. City of Philadelphia*, 121 F.Supp. 2d 810, 813 (E.D. Pa. 2000) (same); *Zurchin v. Ambridge Area Sch. Dist.*, 300 F. Supp. 3d 681, 692 (W.D. Pa. 2018) (dismissing claims against defendants in their official capacity because they are "needlessly duplicative" of the claim made against their employers who is a municipal entity) *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131 (D. N.J. 2017) ("[W]here claims against an office in his official capacity are duplicative of claims against the municipality, those claims are properly dismissed as redundant.").

⁸⁵ *Johnson*, 2020 WL 405605, at *1, n.7.

⁸⁶ *Id.* at 4 (citing *Lenhart*, 528 F. App'x at 114 (concluding the district court rightly dismissed claims against a county prison because even though "[a] local government agency may be a 'person' for purposes of § 1983 liability[, county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)); *Mincy*, 497 F. App'x at 239 (concluding the district court properly determined the county prison is not a "person" under § 1983); *Reagan*, 2009 WL 650384, at 4* (finding "a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws")).

[87] *Id.* at n.7 (citing *Kentucky*, 473 U.S. at 165-66; *Green v. City of Philadelphia*, No. 2190, 2019 WL 2766590, at *3 (E.D. Pa. June 28, 2019)).

[88] *Id.* at n.7 (citing *Monell*, 436 U.S. at 690-91).

[89] *Johnson*, 2020 WL 405605, at n.7.

[90] *Id.*

[91] *Id.*